UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Case No.: 06-291 (JDB) |
| MOJTADA MALEKI-GOMI | : |
| Defendant. | : |

MOTION TO TEMPORARILY
MODIFY CONDITIONS OF RELEASE

Comes now the defendant, Mojtada Maleki-Gomi (hereinafter, Mr. Maleki), by and through counsel, Danny C. Onorato and G. Allen Dale, and respectfully moves this Court to enter an order temporarily modifying his conditions of release. In support thereof the defendant respectfully states:

1. Mr. Maleki, along with his son and a former employee, stands indicted on charges of Conspiracy and violations of the International Emergency Economic Powers Act. He is presently pending a status hearing in this Court on April 16, 2007.

When Mr. Maleki was indicted he was on an extended visit to Iran, a country in which he holds dual citizenship with the United States. After learning of the indictment, he retained counsel and made arrangements to return to the United States to surrender to face the charges levied against him.

Upon his return, Mr. Maleki was released by the Magistrate Judge on condition that he post a five hundred thousand ($500,000.00) property bond within two weeks of his release. True to his word, Mr. Maleki posted a $500,000.00 property bond by encumbering his home.

Last year, Mr. Maleki had entered into negotiations and signed a contract to purchase a condominium in Dubai, United Arab Emirates. Mr. Maleki needs to travel to Dubai either to terminate his interest in this condominium or sell his interest. If he is unable to make this trip before his next court date he will lose the entire down payment, in excess of $50,000.00 (U.S.) Additionally, Mr. Maleki intends to, with the doctor who has treated him in the past, is able to schedule an appointment during the time he is in Dubai.

Mr. Maleki understands that he cannot conduct any business in Dubai other than attempting to sell his interest in the condominium and attempting to obtain an appointment with his physician. He will not conduct any business with Iran nor commit any criminal offense while in the UAE.

We recognize that individuals under indictment are not usually allowed to travel abroad. However, this case has unusual circumstances. First, Mr. Maleki has demonstrated his trustworthiness by returning to this country for the specific purpose of facing the charges against him. Second, his son is also under indictment and he realizes that if he were not to return his son could be punished by being forced to face the charges alone, or not be able to obtain a favorable plea offer from the Government. Mr. Maleki realizes that he may be forced to pay substantial fines if he accepts the plea agreement that has been offered by the government and he will be unable to pay those fines if he is unable to resolve the interest in his condominium in Dubai.

Mr. Maleki owns a home in Los Angeles, California with a value of $1.8 million dollars. The only encumbrance against that home is the $500,000.00 which he has already placed to secure his release. Mr. Maleki is prepared, should the Court grant this motion, to post the entirety of the equity in his home to secure his release, as modified by this request. If Mr. Maleki were not to return he realizes he would lose the entirety of the value of his home where his wife resides, and leave her homeless.

We have previously provided the government with the documentation regarding the investment in Dubai, as well as an appraisal of Mr. Malekis' home. We attach both as Exhibit 1 to this motion. Attached as Exhibit 2 is an affidavit from Mr. Maleki, attesting to the allegations made herein.

Finally, we are of the belief that the Government will promptly file a reply to this motion setting forth their position and what requirements they would wish to be placed upon Mr. Maleki should the Court grant this motion. We advise the Court now that Mr. Maleki is prepared to abide by any conditions the Court sets in order to allow him to make this trip.

Should the Court grant the defendant's request he would notify pretrial services immediately upon his departure from the U.S. and could stay in daily telephonic contact while away. Mr. Maleki would also return within two weeks of his departure, but in no event later than necessary to assure the court that he would return for his next court date.

WHEREFORE, the defendant respectfully prays that the Court grant his motion and sign the attached Order temporarily amending his conditions of release.

Respectfully submitted,

_____/s/_____
G. ALLEN DALE - #954537
Law Offices of G. Allen Dale
601 Pennsylvania Avenue, N.W.
Suite 900 - North Building
Washington, D.C. 20004
(202) 638-2900


_____/s/_____
DANNY C. ONORATO - #480043
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
Suite 900 - North Building
Washington, D.C. 20004
(202) 628-4199

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          :
                                   :
v.                                 :     Case No.: 06-291 (JDB)
                                   :
MOJTADA MALEKI-GOMI                :
                                   :
   Defendant.                      :
                                   :
_____:

## O R D E R

This matter comes before the court on motion of the defendant seeking to temporarily modify his conditions of release. Based upon the defendants' motion and the entire record in this case, including the government's response, it is by this Court this _____ day of March, 2007,

ORDERED, that the defendant's motion be and the same hereby is granted; and it is

FURTHER ORDERED, that the defendant's condition of release be and they hereby are modified to allow the defendant to leave the United States to travel to Dubai, United Arab Emirate, after such time as the defendant posts the entirety of the value of his home as collateral; and it is

FURTHER ORDERED, that Mr. Maleki notify pretrial services and the United States Attorney of the date of his departure and the date of his expected return, such period of time to be no longer than two weeks; and it is

FURTHER ORDERED, that Mr. Maleki return to the United States in sufficient time to appear at his next scheduled court date of April 16, 2007.

                                              _____
                                              JOHN D. BATES, JUDGE
                                              United States District Court

EXHIBIT 1

Case 1:06-cr-00291-JDB   Document 29-2   Filed 03/05/2007   Page 1 of 11



**SCHERTLER & ONORATO, L.L.P.**

| | | |
|---|---|---|
| David Schertler<br>*DC & IL Bars* | Vincent H. Cohen, Jr.<br>*DC, MD & NJ Bars* | Habib F. Ilahi<br>*DC & TX Bars* |
| Danny C. Onorato<br>*DC & CA Bars* | Lisa Fishberg<br>*DC, MD & NY Bars* | Carroll Crumbaugh Love<br>*DC & MD Bars* |
| | Mark E. Schamel<br>*DC, MD & NY Bars* | Julie L. Mitchell<br>*DC, MD & VA Bars* |
| | Robert J. Spagnoletti<br>*DC, NJ, NY & TX Bars* | Mansi J. Shah<br>*VA Bar* |
| | | Brian A. Stanton<br>*DC & CA Bars* |
| | | Michael Starr<br>*DC Bar* |
| | | Peter V. Taylor<br>*DC Bar* |

February 23, 2007

**VIA FACSIMILE & FIRST CLASS MAIL**
*(202) 307-6059*
AUSA Jay Bratt
United States Attorney's Office
 for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

Dear Mr. Bratt:

Thank you for taking the time to speak to us earlier today regarding Mr. Maleki's request to travel to Dubai briefly in March of this year. As we discussed, Mr. Maleki is seeking to travel to Dubai in an effort to either terminate or sell his interest in a condominium, which is currently being developed, that he purchased last year. I have attached documents related to that transaction for you to review.

As the contract and payment schedule indicates, Mr. Maleki is required to make a payment of in excess of $50,000 prior to March 30, 2007. If he does not, he will violate the terms of the agreement and will risk losing the investment he has made to date. As a result, he is seeking to travel to Dubai for the purpose of attempting to either get a refund of the money he has already paid on the condominium or to sell the unit.

Mr. Maleki understands that he would need to be present in Court for our hearing on April 16, 2007. To secure his appearance, he will agree to post the entirety of the equity of his home, which is valued at approximately $1.8 million dollars. Mr. Maleki understands that if he were to fail to return as required, he would be committing a new criminal offense. In addition, he understands that if he failed to return to the United States as required, he would lose his home and that it could impact the ability of his son to obtain a favorable plea from the government.

Mr. Maleki has assured us that he will not conduct any business in Dubai other than attempting to sell his interest in the condominium. He would also see a physician who has treated him in the past if he can obtain an appointment.

---

ATTORNEYS AT LAW | 601 Pennsylvania Avenue, N.W.<br>North Building, 9th Floor<br>Washington, D.C. 20004-2601 | 202.628.4199<br>202.628.4177 *fax*<br>www.schertlerlaw.com

      As always, thank you for your willingness to consider allowing Mr. Maleki to take this trip. Please call us with any questions or concerns.

_____
G. ALLEN DALE - #954537
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C. 20004
(202) 638-2900

_____
DANNY C. ONORATO - #480043
601 Pennsylvania Avenue, N.W.
North Building - 9th Floor
Washington, D.C. 20004
(202) 628-4199



Customer Copy

Sales Order No.     45247
Customer No.        67103
Customer Account    42654
Location Code       DM X2 Attessa-27-2705

## AGREEMENT OF SALE
### Particulars of Sale and Purchase

| | | |
|---|---|---|
| **Vendor** | : | **DUBAI MARINA PHASE 1 LLC** <br> P O Box 9440 <br> Dubai U.A.E |
| **Purchaser Name** | : | Moji Maleki |
| **Address** | : | P.O Box: 2937, Bevely Glen CIR <br> L-A CA, 90077, United States |
| **Tel** | : | 31-0-4704852    Mobile: 31-0-3848800 |
| **Fax** | : | 31-0-4700920 |
| **Project** | : | **Dubai Marina,**          Building: **DM X2 Attessa** |
| **Unit No** | : | Unit (2705) (the "Unit") comprising **980** square Feet, plus 1 parking space and a proportionate interest of .1 % in the commonhold property. |
| **Purchase Price** | : | AED **1,011,888.00** /-   (the "Purchase Price") payable in accordance with the schedule of Instalment Payments set out on page 2 hereof. |
| **Estimated Completion Date** | : | **30-JAN-2008** |

### Agreement to Sell and Purchase

The Vendor agrees to sell the Unit to the Purchaser and the Purchaser agrees to purchase the Unit from the Vendor for the Purchase Price as set out above. This Agreement shall comprise and be subject to and in accordance with the Particulars of Sale and Purchase, Schedule of Instalment Payments and the Unit Terms and Conditions of Sale annexed hereto, including Schedules A (Rules of the Association) B (Property Management Agreement), C (Unit Plans) and D (Specifications) all of which form an integral part of this Agreement.

Signed for and on behalf of the Vendor by its authorised signatories:

Signed by the within named Purchaser: MOJI MALEKI

Date: 4/7/06

Witness

A Subsidiary of Emaar Properties PJSC



## Schedule of Installment Payments

| Installment | Percentage (%) | Date | Amount (AED) |
|---|---|---|---|
| 5 | 20 | 18-JUN-2006 | 202,378.00 |
| 4 | 20 | 30-OCT-2006 | 202,378.00 |
| 3 | 20 | 30-MAR-2007 | 202,378.00 |
| 2 | 20 | 30-AUG-2007 | 202,378.00 |
| 1 | 20 | 30-JAN-2008 | 202,376.00 |
| Completion Date | | 30-JAN-2008 | 1,011,888.00 |

Purchaser Signature                    Signed on behalf of
                                       The Vendor

Printed On
19-JUN-06 14:43:10

Vendor    Purchaser

Feb 02 07 03:38p   Bobby ▮leki                    (864) 233-90▮▮          p.1

# Uniform Residential Appraisal Report

*Maliki*

**FannieMae**                                                                  File # 20060437

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Field | Value |
|---|---|
| Property Address | 2937 BEVERLY GLEN CIR |
| City | LOS ANGELES |
| State | CA |
| Zip Code | 90077 |
| Borrower | GHOMI |
| Owner of Public Record | GHOMI |
| County | LOS ANGELES |
| Legal Description | POR VAC ST ADJ ON E AND POR LOTS 3 AND |
| Assessor's Parcel # | 4379-034-054 |
| Tax Year | 2005 |
| R.E. Taxes $ | 10,608.99 |
| Map Reference | 592A1 |
| Census Tract | 2612.00 |
| Occupant | X Owner |
| Property Rights Appraised | X Fee Simple |
| Assignment Type | Other (describe) DETERMINE MARKET VALUE |
| Lender/Client | BOB CAMPBELL, ESQ |
| Address | 433 N CAMDEN DR #600 BEVERLY HILLS, CA 90210 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   __Yes  X No

Report data source(s) used, offering price(s), and date(s).   PER MLS/NDC, THE SUBJECT HAS NOT SOLD OR LISTED IN THE PAST 12 MONTHS

I __did  __did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $____ Date of Contract____ Is the property seller the owner of public record? __Yes __No  Data Source(s)____

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? __Yes __No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

### Neighborhood Characteristics / One-Unit Housing Trends / One-Unit Housing / Present Land Use %

| Location | Urban | X Suburban | Rural | Property Values | Increasing | X Stable | Declining | PRICE $(000) | AGE (yrs) | One-Unit | 90 % |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Built-Up | Over 75% X | 25-75% | Under 25% | Demand/Supply | Shortage | X In Balance | Over Supply | 900 Low | 0 | 2-4 Unit | |
| Growth | Rapid | X Stable | Slow | Marketing Time | Under 3 mths | X 3-6 mths | Over 6 mths | 20,000 High | 80 | Multi-Family | |
| | | | | | | | | 2,400 Pred. | 25 | Commercial | 10 |
| | | | | | | | | | | Other | |

Neighborhood Boundaries   MULHOLLAND DR TO THE N, LAUREL CANYON TO THE E, SUNSET BL TO THE S AND THE 405 FREEWAY TO THE W.

Neighborhood Description   THE SUBJECT IS LOCATED IN AN AREA OF PREDOMINANTLY RESIDENTIAL PROPERTIES WITH EMPLOYMENT, SUPPORT SERVICES AND TRANSPORTATION NEARBY. THE SUBJECT IS LOCATED IN THE BEL AIR AREA OF LOS ANGELES.

Market Conditions (including support for the above conclusions)   SEE ADDENDUM

| Field | Value |
|---|---|
| Dimensions | SEE PLAT MAP |
| Area | 11,360 SF |
| Shape | FLAG LOT |
| View | NONE |
| Specific Zoning Classification | LARE15 |
| Zoning Description | SINGLE FAMILY RESIDENTIAL |
| Zoning Compliance | X Legal |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   X Yes __No If No, describe

### Utilities

| | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street ASPHALT | X | |
| Gas | X | | Sanitary Sewer | X | | Alley NONE | | |

FEMA Special Flood Hazard Area  __Yes  X No   FEMA Flood Zone  C   FEMA Map #  0601370053C   FEMA Map Date ____

Are the utilities and off-site improvements typical for the market area?   X Yes __No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  __Yes  X No If Yes, describe

### GENERAL DESCRIPTION / FOUNDATION / EXTERIOR DESCRIPTION materials/condition / INTERIOR materials/condition

| Units | X One | One with Accessory Unit | X Concrete Slab | Crawl Space | Foundation Walls | SLAB/AVG | Floors | CRPT,TILE,WD/AVG |
|---|---|---|---|---|---|---|---|---|
| # of Stories | 2 | | Full Basement | Partial Basement | Exterior Walls | STUCCO/AVG | Walls | DRYWALL/AVG |
| Type | X Det. | Att. S-Det/End Unit | Basement Area | sq ft | Roof Surface | TILE/AVG | Trim/Finish | WOOD/AVG |
| X Existing | Proposed | Under Const. | Basement Finish | % | Gutters & Downspouts | YES/AVG | Bath Floor | TILE,CRPT/AVG |
| Design (Style) | 2 STORY | | Outside Entry/Exit | Sump Pump | Window Type | DUAL PANE/AVG | Bath Wainscot | TILE/AVG |
| Year Built | 1982 | | Evidence of | Infestation | Storm Sash/Insulated | N/A | Car Storage | None |
| Effective Age (Yrs) | 20 | | Dampness | Settlement | Screens | SCREENS/AVG | X Driveway # of Cars | 2 |
| Attic | | None | Heating X FWA | HWBB Radiant | Amenities | | WoodStove(s) # | Driveway Surface CONCRETE |
| Drop Stair | Stairs | | Other | Fuel GAS | X Fireplace(s) # | 3 X Fence | | X Garage # of Cars | 3 |
| Floor | X Scuttle | | Cooling X Central Air Conditioning | | X Patio/Deck | X Porch | | Carport # of Cars |
| Finished | Heated | | Individual | Other | Pool | Other | | X Att. Det. Built-in |
| Appliances | X Refrigerator | X Range/Oven | X Dishwasher | X Disposal | Microwave | Washer/Dryer | X Other (describe) COMP |

Finished area above grade contains: 9 Rooms  4 Bedrooms  3 Bath(s)  3,493 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.): SEE ADDENDUM

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). THE SUBJECT IS JUDGED TO BE IN AVERAGE CONDITION WHILE EXHIBITING AVERAGE APPEAL AND QUALITY OF CONSTRUCTION. NO MAJOR REPAIR OR MODERNIZATION NEEDS WERE NOTED. NO EXTERNAL OR FUNCTIONAL OBSOLESCENCE WAS NOTED.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   __Yes  X No If Yes, describe
THERE ARE NO KNOWN OR OBSERVED PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS NOTED.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   X Yes __No If No, describe
THE PROPERTY GENERALLY CONFORMS TO THE NEIGHBORHOOD.

Freddie Mac Form 70 March 2005                             Page 1 of 6                             Fannie Mae Form 1004 March 2005

GA APPRAISALS, INC.

Feb 02 07 03:38p    Bobby▮▮aleki         (864) 233-9▮▮▮              p.2

Uniform Residential Appraisal Report                File # 20060437

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| There are 5 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | | | | 1,799,000 to $ | | 2,350,000 | |
| There are 9 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | | | | 1,775,000 to $ | | 2,250,000 | |
| Address | 2937 BEVERLY GLEN CIR LOS ANGELES | 1124 SOMERA RD LOS ANGELES | | 15545 AQUA VERDE DR LOS ANGELES | | 2698 BASIL LN LOS ANGELES | |
| Proximity to Subject | | 2.5 MI SSW | | 1.7 MI W | | 0.44 MI SSW | |
| Sale Price | $ | $ 2,180,000 | | $ 1,800,000 | | $ 1,775,000 | |
| Sale Price/Gross Liv. Area | $ 0 sq.ft. | $ 604.72 sq.ft. | | 548.78 sq.ft. | | 515.69 sq.ft. | |
| Data Source(s) | | NDC DATA/MLS | | NDC DATA/MLS | | NDC DATA/MLS | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | CONV DOC# 843074 | | CONV DOC# 949097 | | CONV DOC#1491161 | |
| Date of Sale/Time | | 04/18/2006 | 0 | 05/01/2006 | 0 | 07/06/2006 | 0 |
| Location | AVERAGE | AVERAGE | 0 | AVERAGE | 0 | AVERAGE | 0 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 11,360 SF | 21,954 SF | -50,000 | 18,046 SF | NO ADJ | 12,415 SF | 0 |
| View | NONE | CNYN/CTY LGHT | -100,000 | NONE | 0 | NONE | 0 |
| Design (Style) | 2 STORY | MEDIT | 0 | TRAD | 0 | TRAD | 0 |
| Quality of Construction | GOOD | GOOD | 0 | GOOD | 0 | GOOD | 0 |
| Actual Age | 1982 | 1979/UPDATED | -100,000 | 1972 | 0 | 1977 | 0 |
| Condition | AVERAGE | GOOD | -50,000 | AVERAGE | 0 | AVERAGE | 0 |
| Above Grade Room Count | Total 9 / Bdrms 4 / Baths 3 | Total 8 / Bdrms 4 / Baths 3 | 0 | Total 8 / Bdrms 3 / Baths 4 | 0 | Total 8 / Bdrms 5 / Baths 3 | 0 |
| Gross Living Area | 3,493 sq.ft. | 3,605 sq.ft. | -8,500 | 3,280 sq.ft. | 16,000 | 3,442 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | NONE | NONE | | NONE | | NONE | |
| Functional Utility | AVERAGE | AVERAGE | 0 | AVERAGE | 0 | AVERAGE | 0 |
| Heating/Cooling | FAU/CAC | FAU/CAC | 0 | FAU/CAC | 0 | FAU/CAC | 0 |
| Energy Efficient Items | TYP FOR AGE | TYP FOR AGE | | TYP FOR AGE | | TYP FOR AGE | |
| Garage/Carport | 3 CAR GARAGE | 2 CAR GARAGE | 7,500 | 2 CAR GARAGE | 7,500 | 2 CAR GARAGE | 7,500 |
| Porch/Patio/Deck | PATIO NO POOL FIREPLACES | PATIO/BLCNY NO POOL FIREPLACES | | PATIO POOL FIREPLACES | -25,000 | PATIO NO POOL FIREPLACES | |
| Net Adjustment (Total) | | [ ]+ [X]- | $ -301,000 | [ ]+ [X]- | $ -1,500 | [X]+ [ ]- | $ 7,500 |
| Adjusted Sale Price of Comparables | | Net Adj -13.81 % Gross Adj 14.50 % | $ 1,879,000 | Net Adj -0.08 % Gross Adj 2.69 % | $ 1,798,500 | Net Adj 0.42 % Gross Adj 0.42 % | $ 1,782,500 |

[X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  MLS/NDC

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  MLS/NDC

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | NDC DATA/MLS | NDC DATA/MLS | NDC DATA/MLS | NDC DATA/MLS |
| Effective Date of Data Source(s) | 10/12/2006 | 10/12/2006 | 10/12/2006 | 10/12/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales    THE SUBJECT HAS NOT SOLD OR LISTED IN THE PAST 36 MONTHS. THE COMPARABLES HAVE NOT OTHERWISE SOLD IN THE PAST 12 MONTHS.

Summary of Sales Comparison Approach     SEE ADDENDUM

Indicated Value by Sales Comparison Approach $   1,800,000

Indicated Value by: Sales Comparison Approach $ 1,800,000  Cost Approach (if developed) $ _____  Income Approach (if developed) $ 1,817,500
MOST EMPHASIS WAS GIVEN TO THE SALES COMPARISON APPROACH SUPPORTED BY THE COST APPROACH. THE INCOME APPROACH WAS NOT UTILIZED DUE TO THE PREDOMINANCE OF OWNER OCCUPANCY IN THE SUBJECT'S NEIGHBORHOOD.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,800,000 as of 10/12/2006, which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                Page 2 of 6                Fannie Mae Form 1004 March 2005

Feb 02 07 03:39p    Bobby Maleki          (864) 233-9___9         p.3

Uniform Residential Appraisal Report           File # 20060437

ACCEPTANCE OF THIS APPRAISAL BY THE LENDER/CLIENT AND ASSIGNS INDICATES AGREEMENT THAT ANY REVIEW OF THE APPRAISAL MUST BE COMPLETED BY SOMEONE APPROPRIATELY LICENSED IN THE STATE IN WHICH THE APPRAISAL WAS PERFORMED AND SUFFICIENTLY FAMILIAR WITH THE MARKET IN QUESTION.

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate your cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) THE SITE VALUE WAS DERIVED VIA THE EXTRACTION METHOD FROM IMPROVED SALES IN THE NEIGHBORHOOD DUE TO THE LACK OF VACANT LAND SALES.

| ESTIMATED | REPRODUCTION OR | X REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ 1,200,000 |
|---|---|---|---|---|
| Source of cost data MARSHALL-SWIFT | | | Dwelling 3,493 Sq. Ft. @ 225 = $ | 785,925 |
| Quality rating from cost service AVG  Effective date of cost data 10/12/2006 | | | Sq. Ft. @ = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) SEE ATTACHED FLOOR PLAN. PHYSICAL DEPRECIATION IS ESTIMATED VIA THE AGE-LIFE METHOD (20/75=27%). THE ESTIMATED REMAINING ECONOMIC LIFE FOR THE SUBJECT PROPERTY IS 55 YEARS. COST FACTOR ESTIMATES ARE BASED ON REVIEW OF MARSHALL & SWIFT'S COST MANUALS. THE LAND VALUE RATIO IS TYPICAL FOR THE AREA. | | | Garage/Carport 630.80 Sq. Ft. @ 30 = $ | 18,924 |
| | | | Total Estimate of Cost-New = $ | 804,849 |
| | | | Less   Physical   Functional   External | |
| | | | Depreciation 217,309.23 = $ | 217,309.23 |
| | | | Depreciated Cost of Improvements = $ | 587,539.77 |
| | | | "As Is" Value of Site Improvements = $ | 30,000 |
| Estimated Remaining Economic Life (HUD and VA only) Years | | | INDICATED VALUE BY COST APPROACH = $ | 1,817,500 |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes  [ ] No   Unit type(s)  [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of project

Total number of phases _____ Total number of units _____

Total number of units rented _____ Total number of units for sale _____ Total number of units sold _____

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No   Data Source(s) _____

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No   Data Source(s) _____

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No   If No, describe status of completion.

Are the common elements leased to or by the Homeowners' Association?  [ ] Yes  [ ] No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005              Page 3 of 6

Uniform Residential Appraisal Report          File # 20060437

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.
**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.
*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Uniform Residential Appraisal Report                File # 20060437

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Uniform Residential Appraisal Report           File # 20060437

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.
4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.
5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _[signed]_ | Signature _____ |
| Name GLEN KANGAS | Name _____ |
| Company Name GA APPRAISALS, INC | Company Name _____ |
| Company Address 1961 GRAYDON AVENUE | Company Address _____ |
| MONROVIA       CA      91016 | |
| Telephone Number 626-264-4345 | Telephone Number _____ |
| Email Address _____ | Email Address _____ |
| Date of Signature and Report 10/12/2006 | Date of Signature _____ |
| Effective Date of Appraisal 10/12/2006 | State Certification # _____ |
| State Certification # AR014664 | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____ State _____ | Expiration Date of Certification or License _____ |
| State CA | |
| Expiration Date of Certification or License 12/15/2006 | **SUBJECT PROPERTY** |
| ADDRESS OF PROPERTY APPRAISED | [ ] Did not inspect subject property |
| 2937 BEVERLY GLEN CIR | [ ] Did inspect exterior of subject property from street |
| LOS ANGELES         CA     90077 | Date of Inspection _____ |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 1,800,000 | [X] Did inspect interior and exterior of subject property |
| **LENDER/CLIENT** | Date of Inspection _____ |
| Name _____ | **COMPARABLE SALES** |
| Company Name BOB CAMPBELL, ESQ | [ ] Did not inspect exterior of comparable sales from street |
| Company Address 433 N CAMDEN DR #600 | [ ] Did inspect exterior of comparable sales from street |
| BEVERLY HILLS       CA     90210 | Date of Inspection _____ |
| Email Address _____ | |

Freddie Mac Form 70 March 2005                Page 6 of 6                Fannie Mae Form 1004 March 2005

EXHIBIT 2

## AFFADAVIT

COMES Mojtada Maleki-Gome of 2937 Beverly Glen Circle, Los Angeles, California, after having first been duly sworn, so state as follows:

I am under indictment in the United States District Court for the District of Columbia and have a court date of April 16, 2007.

I have dual citizenship with the United States and Iran.

I recently entered into a contract to purchase property in Dubai, United Arab Emirates. I must either terminate that contract or sell my interest by March 30, 2007. If I do not, then I will lose my down payment of approximately $50,000.00 US. To accomplish this task I must travel to Dubai.

I also have a doctor that has treated me and I would like to schedule an appointment with that doctor while in Dubai.

Aside from attending to the financial arrangements surrounding my real property in Dubai and possibly being treated by a physician there, I will conduct no other business either in Dubai or anywhere else. I will have no contact with anyone in Iran relating to any business whatsoever. I will not break any laws either in Dubai or elsewhere.

I believe it will take approximately two weeks to achieve my goals relative to the real property. I will return to the United States in sufficient time to assure that I am able to appear in Court in Washington, DC on April 16, 2007.

I will abide by any restrictions or conditions the Court deems necessary while I am away.

Subscribed and sworn before me this 2nd day of March, 2007. _Malvina McAndrew_.
    Notary

_Mojtada Maleki-Gomi_

MALVINA MC ANDREW
Commission # 1673021
Notary Public - California
Los Angeles County
My Comm. Expires Jun 6, 2010