IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-291 (JDB) |
| | : | |
| v. | : | |
| | : | |
| MOJTADA MALEKI-GOMI, | : | |
| also known as Moji Maleki, | : | |
| BABAK MALEKI, | : | |
| also known as Bobby Maleki, | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, through its undersigned counsel, is submitting this memorandum for the sentencings of co-defendants Mojtada Maleki-Gomi and Babak Maleki. For the reasons set forth below, the government urges the Court to accept the Rule 11(c)(1)(C) plea and sentence for defendant Maleki-Gomi. In addition, the government requests that the Court sentence defendant Maleki to a sentence of probation as recommended in the government's plea agreement with him.

### Background

As set forth in greater detail in the factual proffer in support of the defendants' guilty pleas, the charges in this matter arise from an undercover operation that agents from Immigration and Customs Enforcement ("ICE") and the Department of Commerce conducted jointly. The defendants, through their business, M&M Investment Co. ("M&M"), had advertised some textile machinery known as knit-de-knit ("KDK") equipment for sale on the internet. An ICE cooperating source made contact with former co-defendant Shahram Nejad, who was acting an

agent for M&M and the Malekis. The source introduced an ICE undercover agent to Mr. Nejad, and Mr. Nejad ultimately put the undercover agent in contact with defendant Maleki-Gomi.

After several phone calls and meetings with the undercover agent, Mr. Maleki-Gomi agreed to sell the KDK equipment to the agent and arranged to have the products shipped to Iran through a front company in Dubai, United Arab Emirates. In his discussions with the undercover agent, Mr. Maleki-Gomi acknowledged that the purpose of transshipping the items to Iran through Dubai was to evade the U.S. embargo on trade with Iran.

On December 7, 2005, the goods left the Port of Los Angeles for Dubai. Shortly afterward, U.S. Customs and Border Protection ("CBP") recalled the shipment. In correspondence and meetings with CBP as part of an effort to get the agency to release the equipment, Mr. Babak Maleki lied about the true destination of the products, falsely insisting that they were to remain in Dubai upon their arrival.

## Justification for Rule 11(c)(1)(C) Plea for Mr. Maleki-Gomi

Mr. Maleki-Gomi has entered his guilty plea pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P. The salient provisions of his agreed-upon sentence with the government are that he will serve a sentence of 18 months of incarceration and will pay a fine of $200,000. Several factors support this sentence, which, in terms of incarceration, is below recommended guidelines range of 63-78 months.

First, when the government made its arrests in this case, Mr. Maleki-Gomi, unbeknownst to the government, was in Iran. Mr. Maleki-Gomi could have remained there, a country from which the government never could have extradited him.[1] It is true that his immediate family was

---

[1] Even if Mr. Maleki-Gomi had traveled to a nation with which the United States has an extradition treaty, it still would have been difficult to secure his presence here. The government has had problems getting other nations to extradite defendants in Iranian embargo cases when the

here; however, Mr. Maleki-Gomi also has an extensive family network in Iran. Moreover, when Mr. Maleki-Gomi, through counsel, agreed to return to face these charges, he did so with no pre-conditions.

Second, the nature of the goods here is a mitigating factor. Not only are the KDK machines non-military, they also would not have contributed in any meaningful way to the overall development of infrastructure in Iran, as other types of civilian commodities can. In addition, the government is not even certain that the KDK machines, which are old and used, still function. Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), several courts have sentenced below the recommended guidelines range in Iranian embargo prosecutions when the underlying goods have been neither military nor dual-use commodities.[2] Without conceding that the Booker sentences were appropriate in those other matters, the government acknowledges the strong likelihood of a Booker variance here.

Although Mr. Maleki-Gomi's agreed-upon term of incarceration is below the recommended guidelines range, the fine he has agreed to pay is above that range. In addition, he has agreed to forfeit the funds that the government has seized.[3]

Last, Mr. Maleki-Gomi's plea is part of a global disposition that enabled both the government and the Court to avoid expending resources on a trial. Once retained, Mr. Maleki-Gomi's counsel – along with counsel for Mr. Babak Maleki – made it clear that he wanted to plead guilty. The only thing that took time was working out the details of the joint disposition.

---

underlying goods are purely civilian in nature.

[2] Dual-use commodities are those that have both military and civilian applications, but which have not been specifically designed for military functions.

[3] These funds represent the money that the ICE undercover agent paid to M&M for the KDK machines.

There were no motions, apart from administrative motions, that occupied either the government or the Court.

### Justification for the Plea and Sentence for Babak Maleki

Mr. Maleki's involvement in the illegal transaction described in the indictment came at the end of the conspiracy. After the KDK machinery had left for Dubai, Mr. Maleki accepted payment from the ICE undercover agent for the amount that the agent still owed for the goods. At his meeting with the undercover agent, Mr. Maleki acknowledged that the sale and shipment his father had completed were unlawful. However, the principal illegal conduct in which he engaged was to make false statements to CBP.

The charge against Mr. Maleki in the information reflects the gravamen of his unlawful activities. As part of a pre-trial joint disposition, the government believes that such a charge is appropriate. The recommended sentence of probation is consistent with what the advisory guidelines also suggest.

**Conclusion**

For the foregoing reasons, the Court should accept the Rule 11(c)(1)(C) plea and sentence for Mr. Maleki-Gomi. It should also sentence Mr. Maleki to a period of probation.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY
    D.C. Bar No. 498610


By:           /s/
    Jay I. Bratt
    Assistant United States Attorney
    Illinois Bar No. 6187361
    National Security Section
    Room 11-437
    555 Fourth Street, NW
    Washington, D.C. 20530
    (202) 353-3602
    Jay.Bratt@usdoj.gov

**Certificate of Service**

     I, Jay I. Bratt, certify that I served the foregoing Government's Sentencing Memorandum by ECF on all counsel of record this 3rd day of February, 2008.

                                                             /s/
                                                   Jay I. Bratt